**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **ANTOINE L. WILKINS,**<br><br>                **Plaintiff,**<br><br>        **v.**<br><br>**DISTRICT OF COLUMBIA,**<br><br>                **Defendant.** |

**Civil Action 06-384  (RC)**

**MEMORANDUM OPINION**

While being held at the District of Columbia Central Detention Facility ("D.C. Jail"),

Plaintiff Antoine Wilkins was stabbed by another detainee.  He brought this action against the

District of Columbia, asserting (among other claims) that the stabbing resulted from the

District's negligence.  On July 26 and 27, 2010 the Honorable Henry H. Kennedy, Jr. presided

over a trial in this case.  The following day, pursuant to Federal Rule of Civil Procedure 50(a),

Judge Kennedy entered judgment as a matter of law in favor of the District.  Mr. Wilkins now

moves for reconsideration of that ruling as to his negligence claim.[1]

**I.  BACKGROUND**

Viewing the evidence in the light most favorable to Mr. Wilkins, Judge Kennedy

summarized the facts of this case as follows:

> [A]t 9:15 a.m. on the morning of June 14th, 2005, George Foreman, an inmate at the
> D.C. Jail held on charges of first-degree murder, received a pass to go to the jail's
> law library unaccompanied.  The pass Foreman received . . . has no signature
> indicating that Foreman arrived at the library.  No one from the library called
> Foreman's housing unit to report that he had not arrived.  So no corrections officer[s]
> were alerted [that] they should search for him.

---

[1] The case was assigned to this district judge after Judge Kennedy's retirement.

According to plaintiff's expert witness, this failure to monitor inmate movements violated national standards for the operation of jails.

At 11:18 the same morning, the plaintiff received a pass to go to the jail's mental health unit.  After exiting his housing unit, he saw Foreman talking to a corrections officer.  Wilkins kept walking, but by turning he was able to see Foreman enter a mop closet.  He also thereafter saw Foreman shake hands with another inmate.  As the two men approached an area at the top of an escalator, Foreman stabbed Wilkins nine times with a knife.

During the presentation of the evidence there was testimony about mop closets like the one Foreman entered into prior to stabbing Wilkins.  These closets are for storage of cleaning supplies.  There was testimony that inmates had hidden contraband—that is, items that are not permitted at the jail—in the mop closets.

These closets are supposed to be locked at all times, other than when the jail is being cleaned each afternoon.  But there was evidence from which the jury could infer that all inmates except those who did not have jobs cleaning in the jail had access to them.

According to the plaintiff's expert witness, keeping mop closets locked at times when the general inmate population is permitted to be in the vicinity of the closets is in accordance with national standards of care for the operation of detention facilities.

Trial Tr. at 4–5, July 28, 2010.[2]

Based on this evidence and pursuant to Rule 50(a), which permits a court to grant judgment against a party if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on" the issue in question, FED. R. CIV. P. 50(a)(1), Judge Kennedy granted judgment to the District.  Assessing Mr. Wilkins's negligence claim—the only claim at issue on this motion—Judge Kennedy concluded that Mr. Wilkins had

---

[2] Having reviewed the trial transcript, the court concurs with Judge Kennedy's summary of the evidence, except that a reasonable jury could have concluded that access to the mop closets at the jail was unrestricted, *see* Trial Tr. at 58–59, July 26, 2010, and that (as the court understands Judge Kennedy to have meant) the jail therefore failed to comply with a national standard of care for the operation of detention facilities.

failed to present sufficient evidence to allow a jury to conclude that the District could have

foreseen Mr. Foreman's violent attack.  Mr. Wilkins now seeks the court's reconsideration.

## II.  LEGAL STANDARD

Mr. Wilkins moves under Federal Rules of Civil Procedure 59(a) and 59(e).  The court

will consider this motion under the latter rule, because "[r]egardless of the way a party

characterizes a motion, a post-judgment filing challenging the correctness of the judgment falls

within the perimeter of Rule 59(e)." *Nyman v. FDIC*, 967 F. Supp. 1562, 1569 (D.D.C. 1997).

Rule 59(e) permits a court to alter or amend a judgment.  FED. R. CIV. P. 59(e).  "A Rule

59(e) motion is discretionary and need not be granted unless the district court finds that there is

an intervening change of controlling law, the availability of new evidence, or the need to correct

a clear error or prevent manifest injustice." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C.

Cir. 1996) (per curiam) (internal quotation marks omitted).

## III. ANALYSIS

### A.  Heightened Foreseeability and Ordinary Negligence Under D.C. Law

"'To establish negligence' under D.C. law, 'a plaintiff must prove a duty of care owed by

the defendant to the plaintiff, a breach of that duty by the defendant, and damage to the interests

of the plaintiff, proximately caused by the breach.'" *Sigmund v. Starwood Urban Retail VI, LLC*,

617 F.3d 512, 514 (D.C. Cir. 2010) (quoting *District of Columbia v. Beretta, U.S.A., Corp.*, 872

A.2d 633, 641 (D.C. 2005) (en banc) (quoting *Potts v. District of Columbia*, 697 A.2d 1249,

1252 (D.C. 1997))).  When a plaintiff seeks to hold the defendant liable for injuries caused by

the intervening criminal act of a third party, District of Columbia courts generally apply a

"heightened foreseeability standard," *Bd. of Tr. of the Univ. of D.C. v. DiSalvo*, 974 A.2d 868,

871 (D.C. 2009); *Bruno v. W. Union Fin. Servs., Inc.*, 973 A.2d 713, 719 (D.C. 2009) (per

curiam), asking whether "the criminal act was so foreseeable that a duty arises to guard against

it." *Sigmund*, 617 F.3d at 514 (quoting *Beretta*, 872 A.2d at 641 (quoting *Potts*, 697 A.2d at

1252 (D.C. 1997) (emphasis deleted))).  Although courts usually consider "foreseeability . . .

important to issues of proximate causation and conformity to the standard of care, issues that

arise only after a duty has been found," the D.C. Court of Appeals has "repeatedly spoken of the

heightened foreseeability requirement in terms of duty." *Workman v. United Methodist Comm.*

*on Relief*, 320 F.3d 259, 265 (D.C. Cir. 2003) (citing *Graham v. M. & J. Corp.*, 424 A.2d 103,

105 (D.C. 1980); *Potts*, 697 A.2d at 1252); *see also McKethean v. Wash. Metro. Area Transit*

*Auth.*, 588 A.2d 708, 717 (D.C. 1991); *District of Columbia v. Doe*, 524 A.2d 30, 33 (D.C.

1987); *Lacy v. District of Columbia*, 424 A.2d 317, 323 (D.C. 1980); *Cook v. Safeway Stores,*

*Inc.*, 354 A.2d 507, 509–10 (D.C. 1976).  This court will not "attempt to resolve, as surrogate for

the D.C. Court of Appeals, the analytical framework under which foreseeability is considered,"

*Doe v. Dominion Bank*, 963 F.2d 1552, 1560 (D.C. Cir. 1992), especially when the en banc

Court of Appeals has said that it sees "no need to reconsider that framework of analysis,"

*Beretta*, 872 A.2d at 641 n.4, and subsequently reaffirmed it.  *See DiSalvo*, 974 A.2d at 871–72

(stating that "heightened foreseeability factors directly into the duty analysis" and that

"consideration of whether a duty exists to protect another from intervening criminal acts includes

consideration of heightened foreseeability"); *Bruno*, 973 A.2d at 719 (noting that, when

considering cases involving liability for intervening criminal acts, D.C. courts "apply a

heightened foreseeability standard in determining whether [the defendant] had a duty of care");

*id.* at 720 (discussing several cases involving liability for intervening criminal conduct where

"liability was rejected as a matter of law because 'foreseeability (hence duty)'" was not

established (quoting *Beretta*, 872 A.2d at 642)).  Rather, when exercising pendent jurisdiction

over claims brought under D.C. law,

this court's task is "to apply the law of the District of Columbia as its own courts would apply

it." *Workman*, 320 F.3d at 265; *see Dimond v. District of Columbia*, 792 F.2d 179, 188 n.6 (D.C.

Cir. 1986) ("Although the District of Columbia is not a state, this court has treated it as such for

purposes of applying the doctrine of pendent jurisdiction.").  Those courts plainly understand the

heightened foreseeability standard to be an element of the duty analysis in most cases involving

allegations of liability for negligent failure to prevent the criminal conduct of others.[3]

One prisoner's attack on another is certainly criminal conduct.  But in cases alleging

government liability for jailhouse assaults, the existence of a duty is obvious: "In the District of

Columbia, and in every other jurisdiction of which we are aware, penal authorities are under a

duty to protect and safeguard the prisoners entrusted to their custody."  *Haith v. District of*

---

[3] Both the D.C. Court of Appeals and the D.C. Circuit have applied that standard over many years and a wide range of factual settings.  *DiSalvo*, 974 A.2d at 870–71 (assault in a parking garage); *Bruno*, 973 A.2d at 715–19 (violent robbery in a gas station); *Beretta*, 872 A.2d at 639–45 (distribution of guns used in crime); *Potts*, 697 A.2d at 1250–52 (injury by unknown gunshots as attendees exited boxing match); *Bailey v. District of Columbia*, 668 A.2d 817, 818–19 (D.C. 1995) (injury by gunshot as attendee exited cheerleading competition); *Clement v. Peoples Drug Store*, 634 A.2d 425, 426–28 (D.C. 1993) (shooting in a drug store); *McKethean*, 588 A.2d at 710–11 (collision of car and pedestrians at a bus stop); *Doe*, 524 A.2d at 31–33 (abduction from school property and subsequent rape); *Lacy*, 424 A.2d at 323 (sexual assault by school janitor); *Graham*, 424 A.2d at 104–05 (arson in apartment building); *Cook*, 354 A.2d at 507–10 (robbery in grocery store); *see also Sigmund*, 617 F.3d at 513–14 (car bomb in parking garage); *Novak v. Capital Mgmt. & Dev. Corp.*, 452 F.3d 902, 904, 911–14 (D.C. Cir. 2006) (assault outside of nightclub); *Workman*, 320 F.3d at 260–62 (aid worker murdered abroad); *Dominion Bank*, 963 F.2d at 1553–60 (rape on leased property); *Kline v. 1500 Mass. Ave. Apartment Corp.*, 439 F.2d 477, 478–80, 483–84 (D.C. Cir. 1970) (assault in apartment building).

*Columbia*, 526 A.2d 17, 19 (D.C. 1987); *see also District of Columbia v. Moreno*, 647 A.2d 396, 398 (D.C. 1994) (quoting *Haith*); *District of Columbia v. Carmichael*, 577 A.2d 312, 314 (D.C. 1990) (discussing the District's "duty to protect [prisoners] from harm").  And so the D.C. Court of Appeals does not employ the heightened foreseeability standard when analyzing the government's duty to protect inmates from assault.  Instead, that court applies "an ordinary negligence standard,"[4] under which an assaulted prisoner must establish an applicable standard of care, deviation from that standard, and injury proximately caused by the deviation.  *Hughes v. District of Columbia*, 425 A.2d 1299, 1302 (D.C. 1981) ("[T]he fact that an inmate is assaulted and sustains injuries, does not, by itself, establish liability.  The plaintiff must establish by competent evidence a standard of care; that the defendant violated that standard; and that such violation proximately caused injury to the plaintiff." (citation omitted)); *see also Moreno*, 647 A.2d at 398; *Carmichael*, 577 A.2d at 314; *Haith*, 526 A.2d at 19.  Applying D.C. law, this Circuit does the same.  *Daskalea v. District of Columbia*, 227 F.3d 433, 444–45 (D.C. Cir. 2000) ("Under District of Columbia law, prison authorities have 'a duty to exercise reasonable care under the circumstances in the protection and safekeeping of prisoners' . . . . The District may be held liable for damages caused by its negligence in carrying out that duty." (quoting *Toy v.*

---

[4]  *Matthews v. District of Columbia*, 387 A.2d 731, 734 (D.C. 1978).  In *Matthews*, the Court of Appeals rejected the argument that "the prison environment evokes the need for a special standard of care—one referred to as 'the prior notice rule.'" *Id.* at 733.  That rule would have limited liability to situations in which "[penal] authorities, alerted by some antecedent danger signal, usually stemming from the known violent or dangerous nature of the assailant or known threats to the victim, fail to take adequate precautionary measures despite such notice." *Id.*  Although the court described the prior notice rule in terms of standard of care rather than duty, the rejected rule strongly resembles the heightened foreseeability standard.  Indeed, the Court of Appeals has said that for a jury to find heightened foreseeability, "there must be some evidence that the defendant was, or should have been, *on prior notice* that the intervening criminal act was reasonably likely to occur." *DiSalvo*, 974 A.2d at 872 (emphasis added).

*District of Columbia*, 549 A.2d 1, 6 (D.C. 1988)); *Murphy v. United States*, 653 F.2d 637, 646 (D.C. Cir. 1981) (assuming that a duty exists and holding that "the jury could have found that [the evidence presented was] sufficient . . . to infer that the [prison] staff's negligence proximately caused Murphy's injury"); *but see Ashford v. District of Columbia*, 2006 WL 2711530, at *5 (D.D.C. Sept. 21, 2006) (applying heightened foreseeability standard to a prison assault).

"Prison personnel are not . . . insurers of an inmate's safety." *Hughes*, 425 A.2d at 1302; *accord Matthews*, 387 A.2d at 734. "Thus when a prisoner is assaulted by some of his fellow prisoners, the District is not *ipso facto* liable for his injuries." *Moreno*, 647 A.2d at 398 (quoting *Haith*, 526 A.2d at 19); *accord Hughes*, 425 A.2d at 1302. But such an assault is not as extraordinary as criminal conduct in everyday life. The District's common law acknowledges that "many prisoners are dangerous individuals," *Moreno*, 647 A.2d at 398, and therefore "impose[s] upon prison authorities and employees, a duty to exercise reasonable care in the protection and safekeeping of prisoners," *Hughes*, 425 A.2d at 1302. If an "injured inmate [can] show both that the District breached its duty to protect him from harm and that his injuries were a proximate result of that breach," *Carmichael*, 577 A.2d at 314, then "it is only proper that the responsible entity . . . be held liable," *Matthews*, 387 A.2d at 734, without the inmate having to show that the danger was unusually apparent.

Because this case involves the District of Columbia's alleged liability for the injuries that Mr. Wilkins suffered in a jailhouse assault, it must be evaluated under "an ordinary negligence standard" rather than the heightened foreseeability standard that governs most other cases of liability for the criminal acts of others. *Matthews*, 387 A.2d at 734. In their briefs on the

7

District's summary judgment motion and their oral argument on its Rule 50 motion, neither party correctly identified the governing precedent. Nor have they done so on this motion for reconsideration. Instead, the District has consistently—and erroneously—argued in support of a heightened foreseeability standard, and Mr. Wilkins has failed to rebut that argument. Applying the law that both parties accepted, Judge Kennedy found that the evidence presented by Mr. Wilkins was insufficient to allow a reasonable jury to conclude that the District had a heightened ability to foresee Mr. Foreman's violent attack. The court now considers whether the evidence presented would have allowed the jury to find for Mr. Wilkins under "an ordinary negligence standard." *Matthews*, 387 A.2d at 734.

### B. The Legal Sufficiency of Mr. Wilkins's Evidence

As discussed above, to prove negligence under D.C. law, a plaintiff must establish the defendant's duty, the standard of care (which gives content to that duty), a deviation from that standard—that is, a breach of the duty—and injury proximately caused by the breach. Because Mr. Wilkins was in the custody of the D.C. Jail, the District's duty is clear. *See Moreno*, 647 A.2d at 398; *Carmichael*, 577 A.2d at 314; *Haith*, 526 A.2d at 19. "The question of whether prison officials acted reasonably to secure the safety of an inmate is not one within the realm of the everyday experiences of a lay person," so Mr. Wilkins was required to present expert testimony to establish the standard of care. *Carmichael*, 577 A.2d at 314 (quoting *Hughes*, 425 A.2d at 1303); *accord Moreno*, 647 A.2d at 399. He did so. From the evidence presented at trial, a jury could have concluded that national standards of care for inmate access to mop closets and the monitoring of inmate movements had been proven, and that the District had failed to conform to those standards. Trial Tr. at 4–5, July 28, 2010. The remaining question is whether

the evidence would have allowed a jury to find that Mr. Wilkins's injuries were proximately caused by the District's breach.

"Proximate cause has two elements: a cause-in-fact element and a policy element." *Blaize v. United States*, 21 A.3d 78, 82 (D.C. 2011) (quoting *Butts v. United States*, 822 A.2d 407, 417 (D.C. 2003)). The Court of Appeals "has adopted the 'substantial factor' test set out in the Restatement of Torts for determining whether a negligent act or omission is the cause-in-fact of a plaintiff's injury." *District of Columbia v. Carlson*, 793 A.2d 1285, 1288 (D.C. 2002) (citing *Lacy*, 424 A.2d at 321; *Graham v. Roberts*, 441 F.2d 995, 998 n.3 (D.C. Cir. 1970)). "The Restatement says that '[t]he actor's negligent conduct is a legal cause of harm to another if . . . his conduct is a substantial factor in bringing about the harm . . . .'" *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 431 (1965) (alterations in original)); *accord Majeska v. District of Columbia*, 812 A.2d 948, 951 (D.C. 2002). "The 'policy element' of proximate cause includes various factors which relieve a defendant of liability even when his actions were the cause-in-fact of the injury." *Majeska*, 812 A.2d at 951 (quoting *Carlson*, 793 A.2d at 1290). The foreseeability of the injury—considered in its usual and not its heightened form—is prominent among those factors, because "a defendant 'may not be held liable for harm actually caused where the chain of events leading to the injury appears highly extraordinary in retrospect.'" *Carlson*, 793 A.2d at 1290 (quoting *Morgan v. District of Columbia*, 468 A.2d 1306, 1318 (D.C. 1983) (en banc) (internal quotation marks omitted)); *accord Majeska*, 812 A.2d at 951. "Although the intervening act of another makes the causal connection between the defendant's negligence and the plaintiff's injury more attenuated, such an act does not by itself make the injury unforeseeable." *Majeska*, 812 A.2d at 951 (quoting *Carlson*, 793 A.2d at 1290).

Defendants who have breached a duty are therefore held "responsible for the damages which result, despite the intervention of another's act in the chain of causation, if the danger of an intervening negligent or criminal act should have been reasonably anticipated and protected against." *Id.* (quoting *Carlson*, 793 A.2d at 1290 (quoting *Lacy*, 424 A.2d at 323)).  In sum, "[t]o establish proximate cause, the plaintiff must present evidence from which a reasonable juror could find that there was a direct and substantial causal relationship between the defendant's breach of the standard of care and the plaintiff's injuries and that the injuries were foreseeable." *District of Columbia v. Zukerberg*, 880 A.2d 276, 281 (D.C. 2005) (quoting *District of Columbia v. Wilson*, 721 A.2d 591, 600 (D.C. 1998) (quoting *District of Columbia v. Watkins*, 684 A.2d 395, 402 (D.C. 1996))).

"[A] plaintiff may meet his burden by offering either direct or circumstantial evidence." *Id.*; *accord Speights v. 800 Water Street, Inc.*, 4 A.3d 471, 476 (D.C. 2010) ("In this case . . . the circumstantial evidence was sufficient to enable [the plaintiff] to meet his burden of production."); *Doe v. Binker*, 492 A.2d 857, 861 (D.C. 1985) (Although "circumstantial evidence, by its nature, is probative in varying degrees . . . . circumstantial evidence may be sufficient to establish a case for the jury.").  Relying on circumstantial evidence does not require a jury to speculate.  "'Speculate,' as used in negligence cases, is a word of art with a definite and limited meaning." *Jimenez v. Hawk*, 683 A.2d 457, 461 (D.C. 1996) (quoting *Courtney v. Giant Food, Inc.*, 221 A.2d 92, 94 (D.C. 1966)).  When courts applying D.C. law say that the "[s]ufficiency of the evidence to support a claim for relief may not be established by jury speculation," *Milone v. Wash. Metro. Area Transit Auth.*, 91 F.3d 229, 232 (D.C. Cir. 1996) (applying D.C. law), they mean, "in effect, that a jury should never be permitted to guess as to a

material element of the case such as . . . causation," *Jimenez*, 683 A.2d at 461–62 (quoting

*Courtney*, 221 A.2d at 94).  But there is a difference between "mere conjecture" and "legitimate

deduction."  *Marinopoliski v. Irish*, 445 A.2d 339, 341 (D.C. 1982); *accord Kincheloe v.

Safeway Stores, Inc.*, 285 A.2d 699, 701 (D.C. 1972).  When sufficient circumstantial evidence is

presented, "a jury is not left in the domain of speculation, but they have circumstances upon

which, as reasonable minds, they may ground their conclusions."  *McCoy v. Quadrangle Dev.

Corp.*, 470 A.2d 1256, 1260 (D.C. 1983) (internal quotation marks omitted).

　　　The evidence presented by Mr. Wilkins was largely circumstantial.  There was no direct

evidence of how Mr. Foreman acquired the knife that he used to stab Mr. Wilkins, nor of Mr.

Foreman's movements in the two hours between the time that he received the library pass and

the time that Mr. Wilkins saw him talking to a corrections officer.  But a reasonable jury could

have inferred that Mr. Foreman was freely moving throughout the jail during that time, because

his pass did not bear a signature indicating that he arrived at the library, as one witness testified

that it normally would.  Trial Tr. at 25, July 26, 2012.  Having made this inference, a jury could

have gone on to conclude that the District's failure to conform to the standard of care for

monitoring Mr. Foreman's movements had been a substantial factor in his attack on Mr.

Wilkins—because Mr. Foreman would not have been in a position to attack Mr. Wilkins if he

had been properly monitored—and that the danger of such an attack by one inmate on another

should have been reasonably anticipated and protected against.  Indeed, the danger of such an

attack is one important reason that penal authorities are under a duty of care.  "Where evidence

of the failure to adhere to a reasonable standard of care exists, and the 'injury which has in fact

occurred is precisely the sort of thing that proper care on the part of the defendant would be

intended to prevent,' not only is the existence of proximate cause a jury question, but 'the court can . . . allow a certain liberality to the jury in drawing its conclusion.'" *Murphy*, 653 F.2d at 650 (quoting W. PROSSER, LAW OF TORTS 243 (4th ed. 1971)) (applying D.C. law).  In sum, the circumstantial evidence of Mr. Foreman's freedom of movement is enough to have allowed a jury to conclude that the District's negligence was a proximate cause of Mr. Wilkins's injury—and the jury need not have engaged in impermissible speculation to reach that conclusion.[5]

## IV. CONCLUSION

"Questions of proximate cause are usually questions of fact."  *Carlson*, 793 A.2d at 1288.  "It is only in a case where the facts are undisputed and, considering every legitimate inference, only one conclusion may be drawn, that the trial court may rule as a matter of law on . . . proximate cause."  *Wash. Metro. Area Transit Auth. v. Jones*, 443 A.2d 45, 50 (D.C. 1982) (en banc).  This is not the "exceptional case[]" in which "questions of . . . proximate cause pass from

---

[5] The question of whether a reasonable jury could have concluded that Mr. Foreman's access to the mop closet was also a proximate cause of Mr. Wilkins's injury is a closer one.  On the evidence presented, it is possible that Mr. Foreman had the knife used in the attack on his person when Mr. Wilkins passed him in the hall, or that he retrieved it from the mop closet shortly after seeing Mr. Wilkins, or that he somehow acquired it from the inmate whose hand he shook after leaving the closet.  The jury heard evidence about shakedowns and random searches of inmates at the D.C. Jail, from which it could have inferred that neither Mr. Foreman nor the inmate he greeted was likely to be carrying the knife on his person as he walked the halls.  The jury also heard evidence that contraband had been stored in mop closets, and that Mr. Foreman went into the closet just after Mr. Wilkins saw him (and, presumably, just after he saw Mr. Wilkins).  That sequence of events could suggest that Mr. Foreman saw an opportunity to attack Mr. Wilkins and knew where to find a weapon with which to do so.  If the jury concluded that Mr. Foreman retrieved the knife from the mop closet, then it could certainly have determined that his access to that closet was a proximate cause of the injury in this case.  But the court can resolve this motion without determining whether the evidence would have supported a jury's conclusion that the knife was in fact stored in the mop closet, and so leaves that question unanswered at this time.

the realm of fact to one of law." *Majeska*, 812 A.2d at 950 (*Carlson*, 793 A.2d at 1288 (quoting *Shu v. Basinger*, 57 A.2d 295, 295–96 (D.C. 1948))).  Those questions are therefore a jury's to decide.

For the foregoing reasons, this court will vacate the judgment as to Mr. Wilkins's negligence claim and order a new trial.

Rudolph Contreras
United States District Judge

Date: July 24, 2012